# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 22, 2010

## STATE OF TENNESSEE v. DAVID L. BAKER

**Appeal from the Criminal Court for Jackson County**
**No.  03-49    John Wootten, Judge**

---

**No.  M2009-01651-CCA-R3-CD - Filed July 26, 2010**

---

In April 2004, Appellant, David L. Baker, pled guilty in Jackson County to one count of aggravated assault.  Pursuant to the plea agreement, Appellant was ordered to serve four years on probation.  Appellant's probation officer filed a probation violation warrant alleging that Appellant had violated Rules 1 and 4 of the probation order.  Following a hearing, the trial court revoked Appellant's probation based upon a violation of Rule 10 of the probation order.  Appellant appealed to this Court arguing that his right to due process had been violated because he did not receive sufficient notice of the Rule 10 violation to support the revocation of his probation.  We have reviewed the record on appeal and must agree with Appellant.  The trial court based the revocation upon a violation which was not alleged in the probation violation warrant and Appellant had neither written nor actual notice of the allegation of this violation.  Therefore, we reverse the revocation of Appellant's probation and remand for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Thomas H. Bilbrey, Assistant Public Defender, Lafayette, Tennessee, for the appellant David L. Baker.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General, and Jimmy Lea, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In April 2003, the Jackson County Grand Jury indicted Appellant for one count of especially aggravated kidnapping. On April 12, 2004, Appellant pled guilty to one count of aggravated assault. Pursuant to the plea agreement, Appellant was ordered to serve four years on probation. The four year probationary sentence was ordered to be served consecutively to a sentence from a prior conviction.

On March 31, 2008, Appellant's probation supervisor filed a probation violation warrant. This warrant alleged that Appellant had committed new offenses consisting of domestic assault, driving on a revoked license and violating an order of protection. On April 14, 2008, an amended probation violation warrant was filed alleging that Appellant also failed to report and was dismissed from sex offender treatment for failure to attend. On May 12, 2008, the trial court filed an order partially revoking Appellant's probation and ordering the remainder of his sentence to be served on probation.

In September 2008, Casey Sykes became the probation officer supervising Appellant. On December 19, 2008, Mr. Sykes filed a probation violation warrant alleging that Appellant had been arrested in Putnam County on December 1, 2008, for assault, resisting arrest, and disorderly conduct. The warrant stated that these allegations were a violation of Rule 1 of Appellant's probation order. The warrant also alleged that Appellant had failed to attend sex offender treatment classes on two dates in October 2008. The warrant stated that these allegations were a violation of Rule 4 of Appellant's probation order.

The trial court held a hearing on July 10, 2009. Deputy David Blackwell with the Putnam County Sheriff's Department testified that on December 1, 2008, he was dispatched to be a back-up officer for a noise complaint. When he arrived Deputy Sonny Farley was at the door of the residence. Deputy Farley and Appellant were involved in a verbal argument. Deputy Blackwell approached the residence. Appellant repeatedly told Deputy Farley and Deputy Blackwell to leave. Deputy Blackwell heard a female voice in the residence exclaim, "You broke my glasses." That statement caused the investigation to turn into a domestic violence investigation. Appellant tried to shut the door on the deputies, but they stepped into the residence before he could shut the door. Deputy Blackwell saw a woman who appeared to be crying whose face was red and had a cut on her lip.

When Deputy Blackwell entered the residence, the woman was standing behind Appellant. The deputies repeatedly asked the woman to speak with them and tell them what had happened. Appellant told her not to say anything. Deputy Blackwell brought his

flashlight up to have a better look at the woman's face. When Deputy Blackwell brought the flashlight up, Appellant grabbed it and pushed it into Deputy Blackwell's mouth. Deputy Blackwell told Appellant he was under arrest for assault. When Deputy Blackwell attempted to place handcuffs on Appellant, he began resisting. Deputy Farley and Deputy Blackwell had to get Appellant on the ground before they could get handcuffs on him. After getting the handcuffs on him, they took Appellant to the patrol car. In the patrol car, Appellant began trying to kick the windows out. Deputy Blackwell's supervisor advised Deputy Blackwell to administer a one second burst of Freeze Plus P, a chemical, to calm Appellant down. Appellant was then transported to jail.

Casey Sykes became Appellant's probation officer September 2008. When asked if Appellant complied with the conditions of his probation, Mr. Sykes replied that Appellant was arrested in Putnam County for assault, resisting arrest, and disorderly conduct. Mr. Sykes also stated that Appellant had missed appointments in October 2008 that were scheduled with his sex offender treatment provider. Mr. Sykes testified that it is a condition of Appellant's probation to not pick up any further criminal charges. At the time of the hearing, the above charges against Appellant were still pending. According to Mr. Sykes, Appellant was current on his fees, did not have any problem with reporting for his appointments, and had only missed two appointments for the sex offender treatment program.

Ms. Christy Irwin testified on behalf of Appellant at the hearing. She stated that she was the woman Deputy Blackwell had seen at the residence. She testified that Appellant was living with her on December 1, 2008. She recalled the deputies coming to her residence that night because a neighbor had complained about loud music. She testified that when the deputy knocked on the door, she yelled to Appellant that she could not find her glasses. She found an older pair of glasses that were broken and put on the broken glasses to answer the door. She stated that Appellant told the deputies that they did not need to be at the residence, and they could leave. Appellant attempted to close the screen door, and one of the deputies yelled assault. Ms. Irwin testified that the deputies rushed through her screen door and took Appellant to the ground. According to her, the deputies were so forceful that Appellant ended up with two black eyes. They handcuffed him and took him to a patrol car. She stated that there was nothing upsetting her before the officers arrived. She also denied that she had a busted lip.

At the conclusion of the hearing, the trial court revoked Appellant's probation. The trial court made the following findings:

Rule No. 10, and I always like to reread [the probation order] sometimes, says I will agree that my probation officer or any law enforcement has my consent to search my residence, that means go in.

His own witness tells me that [Appellant] said leave three or four times. He is not in a position to do that. He has been convicted of two violent crimes. He has an eight year sentence hanging over his head.

The trial court ordered Appellant to serve the four year sentence originally imposed. Appellant filed a timely notice of appeal.

## ANALYSIS

Appellant argues on appeal that "the evidence of record is [in]sufficient" to support "the Trial Court's verdict of guilty of Violation of Probation" and that his rights to due process were violated because he was not given sufficient notice of the basis of the violation upon which the trial court based the revocation of his probation. The State argues that the trial court did not abuse its discretion in revoking Appellant's probation and that Appellant's due process rights were not violated because the revocation was based upon more than the violation of Rule 10 of Appellant's probation order.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. T.C.A. §§ 40-35-310 & -311. After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* T.C.A. §§ 40-35-308(C) & -311(e); *State v. Hunter*, 1 S.W.3d 643, 647-48 (Tenn. 1999). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. *Id.* The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). Further, "[i]t is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn.

1996). Moreover, a defendant who is already on probation is not entitled to an additional grant of probation or some other form of alternative sentencing. *State v. James Cravens*, No. M2002-01216-CCA-R3-CD, 2003 WL 22282174, at *2 (Tenn. Crim. App., at Nashville, Oct. 2, 2003), *perm. app. denied*, (Tenn. Mar. 8, 2004).

The United States Supreme Court set forth the minimum requirements of due process in probation proceedings in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). Those requirements include a conditional right to confront and cross-examine adverse witnesses. The Court stated:

> [There must be] preliminary and final revocation hearings. At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. *Morrissey v. Brewer*, 408 U.S. 471, 487, 92 S. Ct. 2593, 2603, 33 L. Ed.2d 484 (1972). The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the "minimum requirements of due process" include very similar elements: (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation or] parole.

*Gagnon v. Scarpelli*, 411 U.S. at 786 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

As stated above, notice of the grounds for the revocation of probation is required by due process. Though written notice is preferred, this Court has previously held that actual notice will suffice to meet the due process requirements in a revocation of probation proceeding. *See, e.g.*, *State v. Clifford W. Jackson*, No. 02C01-9802-CR-00041, 1999 WL 615742 at *4 (Tenn. Crim .App. at Jackson, August 13, 1999); *State v. James C. Wolford*, No. 03C01-9708-CR-00319, 1999 WL 76447 at *7 (Tenn. Crim. App., at Knoxville, Feb.

18, 1999); *State v. Peck*, 719 S.W.2d 553, 557 (Tenn. Crim. App. 1986); *Stamps v. State*, 614 S.W.2d 71, 73-74 (Tenn. Crim. App. 1980).

As stated above, the infractions alleged in the probation violation warrant were violations of Rule 1, an arrest for assault, resisting arrest, and disorderly conduct, and Rule 4, failure to attend sex offender treatment classes. Although there was ample evidence presented of Appellant's violation of these rules, the trial court based the revocation of probation on Rule 10, failure to allow consent to search his residence. The probation violation warrant did not allege a violation of Rule 10 of Appellant's probation order. In addition, there is no evidence in the record that Appellant was ever given any notice either actual or written that a violation of Rule 10 would be a basis at the hearing for revocation of his probation. Clearly, Appellant was not given notice that his probation would be revoked on the basis of Rule 10 of his probation order. Therefore, Appellant's assertion that his due process rights were violated because of insufficient notice of the basis of the alleged violation is correct.

We point out that had the trial court based the revocation on Appellant's arrest for assault, resisting arrest, and disorderly conduct the evidence was sufficient to support a violation of Rule 1 of the probation order. The testimony of a police officer concerning the facts of an arrest may be sufficient to support the revocation of probation. *State v Eric L. Abell*, No. M2006-01981-CCA-R3-CD, 2007 WL 2088949, at *5 (Tenn. Crim. App., at Nashville, Jul. 23, 2007) (citing *State v. Chris Allen Dodson*, M2005-01776-CCA-R3-CD, 2006 WL 1097497, at *3 (Tenn. Crim. App., at Nashville, Mar. 31, 2006)).

The trial court erred in revoking Appellant's probation based upon Rule 10 when there was no actual or written notice of an alleged violation of that rule. Therefore, we must reverse the trial court's order of revocation and remand for further proceedings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's revocation of Appellant's probation and remand for further proceedings in accordance with this opinion.

_____

JERRY L. SMITH, JUDGE