# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 10, 2016 Session

## STATE OF TENNESSEE v. CHRISTOPHER ROY MCGILL

**Appeal from the Criminal Court for Davidson County**
**No. 2014-C-1834    Seth W. Norman, Judge**

_____

**No. M2015-01929-CCA-R3-CD – Filed July 18, 2016**

_____

Defendant, Christopher Roy McGill, received an eight-year sentence on community corrections and was placed into a drug court treatment program. A violation warrant was filed alleging that Defendant brought drugs into the treatment program. After a hearing, the trial court revoked Defendant's community corrections sentence after finding that Defendant failed to report other residents bringing drugs into the treatment program. On appeal, Defendant argues that the trial court improperly admitted hearsay testimony, that the evidence was insufficient to support the trial court's finding that Defendant violated the terms of his community corrections sentence, and that the trial judge should have recused himself because he was also a member of Defendant's drug court team. Upon our review of the record, we hold that the trial court erred by admitting hearsay testimony without a finding of good cause or reliability, that the trial court erred in revoking Defendant's community corrections sentence on a ground of which Defendant had no notice and for which there was a lack of evidence in the record, but that the trial court did not err in failing to recuse itself. We reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

John M. Ballard, Nashville, Tennessee, for the appellant, Christopher Roy McGill.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Glenn Funk, District Attorney General; and Rebecca Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual and Procedural Background*

In July 2014, Defendant was charged by the Davidson County Grand Jury with one count of possession of a controlled substance with intent to sell or deliver within 1000 feet of a drug-free school zone, one count of possession of drug paraphernalia, and one count of driving without a license. Defendant pled guilty to the reduced charge of possession of a Schedule II controlled substance with intent to sell or deliver, and the other two charges were dismissed. On March 17, 2015, the trial court sentenced Defendant to eight years to be served on community corrections. As a condition of his community corrections sentence, Defendant was to participate in an in-patient drug treatment program through the Morgan County Residential Recovery Court (MCRRC).

On June 12, 2015, a violation warrant was issued alleging that Defendant had violated the rules of MCRRC by possessing, using, and distributing methamphetamine to other residents in the program. A revocation hearing was held on September 2, 2015, at which Bradley MacLean, the Program Director of MCRRC, and Defendant testified. The State's slim proof consisted of nine questions to Mr. MacLean, including his name and occupation.

Mr. MacLean testified he had received reports from three different residents that Defendant brought methamphetamine onto the campus and distributed it to members of the community.[1] No drugs were ever found on Defendant's person or in his property. There were also reports that Defendant appeared to be high; however, Defendant passed all of his drug screens. Additionally, the individuals who had reported receiving drugs from Defendant also tested negative. Mr. MacLean could not recall Defendant violating any other rules of the program.

Defendant testified that he liked being in the MCRRC program. Defendant described the work he did on the campus and his progress through the treatment program. Defendant testified that during the eight or nine weeks he was at the program, he felt isolated and had a hard time trusting people. Defendant felt like he was improving and had three good friends in the program. Defendant felt that the program had been beneficial and had given him hope that he could change. Defendant requested that if he could not return to the drug court program, that the trial court send him to a halfway house or some other structured program.

---

[1] This testimony will be discussed further in the Analysis section below.

- 2 -

Defendant denied taking any drugs or giving anyone any drugs. Defendant testified that he heard rumors that one of the other residents received a package containing Suboxone. Another resident asked Defendant if his girlfriend could "bring something" when she came to visit or if Defendant could give him a number for his family to call to obtain "ice." Defendant told the resident that he was not interested. On another occasion, a resident showed Defendant a cell phone, possession of which was a violation of program rules, and stated that he was "under the influence of 100 milligrams of morphine and 23 Neurontins." This resident asked Defendant if he wanted a Neurontin and showed Defendant a pill that he called "Gabapentin." On cross-examination, Defendant was asked whether he reported the cell phone, and Defendant testified that he reported it to his counselor.

At the conclusion of the hearing, the trial court stated that it had "heard several lines of proof in this matter wherein [Defendant] knew that there were drugs in the community and did not report them, which is a number one violation." The trial court terminated Defendant from the drug court program, revoked Defendant's community corrections sentence, and placed his eight-year sentence into effect. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court erred by admitting unreliable hearsay, that the evidence was insufficient to support the revocation of community corrections, and that the trial court erred by failing to sua sponte recuse itself.

As an initial matter, we note that "[g]iven the similar nature of a community corrections sentence and a sentence of probation, . . . the same principles are applicable in deciding whether a community corrections sentence revocation was proper." *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). Therefore, any references to probation in the following sections apply equally to community corrections.

*I. Hearsay*

Defendant argues that the trial court erred by allowing Mr. MacLean to testify to hearsay without making a determination as to its reliability and whether there was good cause to allow it into evidence. The State concedes that the trial court erred but argues that the error was harmless because the trial court did not base its decision to revoke Defendant's community corrections sentence on the hearsay evidence.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Typically, hearsay is not admissible. *Id.* at 802. This

is because an accused has a constitutional right to confront adverse witnesses. U.S. Const. Amend. VI; Tenn. Const. Art I, § 9. This Court has previously held that a defendant facing revocation of a suspended sentence, such as probation or community corrections, "may not be subject[ed] to revocation upon evidence which they have had no opportunity to hear, test by cross-examination or refute by contrary evidence." *Stamps v. State*, 614 S.W.2d 71, 74 (Tenn. Crim. App. 1980). However, because "the issue in a probation revocation proceeding is not the guilt or innocence of the defendant, the right to confront and cross-examine adverse witnesses is not absolute and may be relaxed under certain circumstances." *State v. Wade*, 863 S.W.2d 406, 407 (Tenn. 1993).

The United States Supreme Court has held that a probationer is entitled to certain minimum due process rights, which include

> (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . ; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking probation or parole.

*Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Under this standard, a trial court may deny a defendant's right to confrontation "upon a finding of good cause." *State v. Moss*, 13 S.W.3d 374, 386 (Tenn. Crim. App. 1999) (citing *Wade*, 863 S.W.2d at 408). However, "even where there is a showing of good cause, due process requires proof that the [hearsay evidence] is reliable." *Wade*, 863 S.W.2d at 408.

In this case, Mr. MacLean testified that he had received reports from several MCRRC residents that Defendant had "brought drugs, namely methamphetamine, on campus and distributed the drug to members of the community." Defendant objected to the testimony, but the trial court overruled the objection, stating, "This is a probation violation hearing, it is admissible." The trial court did not make a specific finding of "good cause" to justify the denial of Defendant's right to confront and cross-examine the individuals who had made the statements to Mr. MacLean. The record is silent as to both the identities of these individuals as well as the reason these individuals were not called as witnesses. Moreover, the trial court did not make any findings as to the reliability of the statements. In fact, Defendant elicited testimony during his cross-examination of Mr. MacLean that no drugs were ever found in Defendant's possession and that those that had claimed to have received drugs from Defendant all tested negative, indicating that the statements may not have been reliable. Additionally, Defendant testified and denied the

allegations. *Cf. State v. Michael Carnell Jones*, No. E2004-02919-CCA-R3-CD, 2005 WL 2572390, at *4 (Tenn. Crim. App. Oct. 13, 2005) (finding error in the trial court's admission of hearsay evidence without a finding of good cause but affirming the revocation of community corrections because the defendant testified and admitted the violation), *no perm. app. filed*. Without the requisite findings by the trial court, Defendant's community corrections sentence could not be revoked based on these hearsay statements. We will address the State's contention that this error was harmless in the following section.

## II. Sufficiency of the Evidence

Defendant argues that there was insufficient evidence to support the trial court's revocation of his community corrections sentence. The State responds that the trial court did not abuse its discretion in revoking Defendant's community corrections sentence based on a finding that Defendant did not report the drug use and possession of other residents in the program, thereby rendering harmless the error with regard to the hearsay statements discussed above.

A trial court has the discretion to revoke a defendant's community corrections sentence upon a finding by a preponderance of the evidence that the defendant has violated the conditions of community corrections. *See* T.C.A. § 40-35-311(e); 40-36-106(e). Proof of a violation need not be established beyond a reasonable doubt but must be sufficient to allow the trial court "to make a conscientious and intelligent judgment." *State v. Shaffer,* 45 S.W.3d 553, 554 (Tenn. 2001). The trial court's decision to revoke a community corrections sentence is subject to an abuse of discretion standard of review. *Harkins*, 811 S.W.2d at 82. An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation has occurred. *Id*.

As discussed above, a defendant facing revocation of a probation or community corrections sentence is entitled to certain minimum due process rights, including the right to "written notice of the claimed violations." *Gagnon*, 411 U.S. at 786. Generally, "[t]he revocation of probation based on grounds not alleged and noticed to the defendant is a violation of due process." *State v. Chad Allen Conyers*, No. E2004-00360-CCA-R3-CD, 2005 WL 551940, at *4 (Tenn. Crim. App. Mar. 9, 2005), *no perm. app. filed*. However, this Court has held that actual notice of the violation on which the trial court relied is sufficient to meet the relaxed due process standards. *See State v. Peck*, 719 S.W.2d 553, 556 (Tenn. Crim. App. 1986) (holding that a trial court's initial judgment revoking probation without a hearing gave the defendant actual notice of the alleged violations at the subsequent rehearing); *Stamps*, 614 S.W.2d at 73-74 (holding that a defendant had adequate notice when she was advised at one hearing that her conduct could subject her to a revocation of probation and the hearing was continued to give the defendant an opportunity to cease the conduct). Additionally, the trial court's reliance, at least in part,

on a ground for revocation not noticed to the defendant has been held to be harmless if the trial court also relied upon properly noticed grounds supported by the evidence. *See State v. David W. Sonnemaker*, No. E2003-01402-CCA-R3-CD, 2004 WL 483239, at \*5 (Tenn. Crim. App. Mar. 12, 2004), *perm. app. denied* (Tenn. Oct. 11, 2004); *State v. Ricky Davis*, No. 03C01-9706-CC-00215, 1998 WL 205925, at \*2 (Tenn. Crim. App. Apr. 29, 1998). However, when a trial court relies solely upon a ground of which the defendant had no notice, this Court will reverse the judgment of the trial court, even when the evidence in the record would have supported revocation on the grounds alleged in the violation warrant. *See State v. David L. Baker*, No. M2009-01651-CCA-R3-CD, 2010 WL 2943113, at \*5 (Tenn. Crim. App. July 26, 2010), *no perm. app. filed*.

In this case, the trial court did not revoke Defendant's community corrections sentence based on the improperly admitted hearsay reports that Defendant brought drugs into the treatment program and distributed them to other residents, as was alleged in the violation warrant. Instead, the trial court revoked Defendant's community corrections sentence based on its finding that Defendant "knew that there were drugs in the community and did not report them, which is a number one violation." This finding was based upon Defendant's testimony that other residents had discussed acquiring and being under the influence of drugs and one resident even showing him a pill. However, Defendant's failure to report the presence of drugs in the treatment program was not included as a possible ground for revocation in the violation warrant. Defendant had no notice, either written or actual, that his community corrections sentence could be revoked on this ground. Because Defendant did not have constitutionally adequate notice of the ground upon which the trial court relied in revoking his community corrections sentence, we must reverse the judgment of the trial court.

Moreover, we note that even without the notice issue, the trial court abused its discretion in basing its finding on the *absence* of evidence. While Defendant testified that he reported a contraband cell phone, he was not asked and did not testify as to whether he reported his discussions with other residents of the program regarding drugs. Presumably, with proper notice, defense counsel would have known to ask Defendant whether he reported the drugs (or advise Defendant not to testify if he would implicate himself by admitting that he did not report them). However, the record as it currently stands "is devoid of substantial evidence to support the conclusion that a violation has occurred." *Harkins*, 811 S.W.2d at 82. Therefore, we would be compelled to reverse the judgment of the trial court even if Defendant had had proper notice that his community corrections sentence could be revoked for failing to report the presence of drugs in the treatment program.

*III. Recusal of Trial Judge*

Finally, Defendant argues that the trial judge, who also participated as a member of Defendant's drug court team, violated Defendant's right to due process by failing to recuse himself from the probation violation hearing. Defendant acknowledges that he did not file a motion requesting recusal but argues that the trial court should have done so sua sponte and that this issue should be reviewed for plain error. The State responds that Defendant has failed meet his burden of demonstrating the existence of plain error.

As discussed above, a defendant facing revocation of probation or community corrections is entitled to certain due process protections, which include a hearing before a neutral and detached magistrate. *See Gagnon*, 411 U.S. at 786. "A judge should grant a motion to recuse when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted). Whether a judge should recuse himself or herself from a legal proceeding rests within the sound discretion of the judge and will not be reversed on appeal "unless clear abuse appears on the face of the record." *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006).

We agree that Defendant has waived consideration of this issue by failing to follow the procedural requirements of a motion to recuse. *See* Tenn. Sup. Ct. R. 10B; *see also* Tenn. R. App. P. 36(a) (stating that relief is not available "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Under Tennessee Supreme Court Rule 10B,

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion. . . . The motion shall state, with specificity, all factual or legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Tenn. Sup. Ct. R. 10B, § 1.01. A motion to recuse "must be filed promptly after the facts forming the basis for the motion become known . . . and the failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Lofton v. Lofton*, 345 S.W.3d 913, 917 (Tenn. Ct. App. 2008) (internal quotation omitted). Our "[c]ourts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Kinard v. Kinard*, 986

S.W.2d 220, 228 (Tenn. Ct. App. 1998) (quoting *Holmes v. Eason*, 76 Tenn. 754, 757 (1882)).

Defendant asserts that he did not file a motion to recuse prior to the revocation hearing because he "could not have known what or how much *ex parte* information the trial court knew regarding the issues at hand." Defendant asks this Court to review the issue for plain error. *See* Tenn. R. App. P. 36(b). There are five factors that must be established before an error may be recognized as plain:

> (a) the record clearly establishes what occurred in the trial court;
> (b) a clear and unequivocal rule of law was breached;
> (c) a substantial right of the accused was adversely affected;
> (d) the accused did not waive the right for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The burden is on the defendant to establish all five factors, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* Furthermore, the error must be of "such a great magnitude that it probably changed the outcome of the trial." *Id.* at 283.

In this case, Defendant has not shown that a clear and unequivocal rule of law has been breached. Defendant relies heavily on this Court's opinion in *State v. Brent R. Stewart*, No. W2009-00980-CCA-R3-CD, 2010 WL 3293920 (Tenn. Crim. App. Aug. 18, 2010), *no perm. app. filed*. In that case, we held that the Due Process Clause bars a trial judge who participated as a member of the defendant's drug court team "from adjudicating a subsequent [probation] revocation when the violation or conduct at issue in both forums involves the same or related subject matter." *Id*. at *4 (emphasis omitted). This Court was concerned that the judge, during the drug court treatment process, might receive a "considerable amount of ex parte communication" from and about the defendant that could impact the decision in the subsequent probation revocation hearing. *Id*. at *8. In that case, while ruling on the defendant's probation revocation, the trial court specifically noted a prior instance when the defendant did not tell the truth to the drug court in weighing the defendant's credibility. *Id*. at *9. This Court noted that, due to the judge's familiarity with the subject matter, the prosecutor did not have to raise the issue of the defendant's alleged untruthfulness during cross-examination, and "the defendant was deprived of any meaningful opportunity to rebut the allegation of untruthfulness." *Id*.

Recently, this Court clarified that our holding in *Brent R. Stewart* did not create a blanket prohibition on a drug court judge later adjudicating a probation revocation. *See*

*State v. Donte Dewayne Watson*, No. M2015-00108-CCA-R3-CD, 2016 WL 791563 (Tenn. Crim. App. Mar. 1, 2016), *perm. app. filed* (Tenn. Apr. 29, 2016). In that case, the trial judge denied having any ex parte communications concerning the defendant. *Id.* at *2. This Court found that the trial judge "had no meaningful level of involvement with the subject matter of the revocation," and there was no proof in the record that the trial court judge "'gained personal knowledge of disputed facts'" through any ex parte communication. *Id.* (quoting Tenn. Sup. Ct. R. 10, RJC 2.9, comment [4]). We held that "a drug court judge is not prohibited from presiding over a community corrections revocation hearing or probation revocation hearing simply because the revocation warrant alleges a violation of a drug court rule, a drug court contract, or a drug court order." *Id.*

Based on this Court's ruling in *Donte Dewayne Watson*, we conclude that there is no clear and unequivocal rule of law that a trial judge must recuse himself simply because he was also a member of a defendant's drug court team. There must be some proof in the record that the trial judge either received ex parte communications or was actively involved in the defendant's treatment in order to show that the trial judge was neither neutral nor detached. In this case, there is no proof in the record that the trial court judge was privy to any ex parte communications regarding the subject matter of Defendant's community corrections violation or that he relied upon information learned during the course of the drug court program without giving Defendant a fair chance for rebuttal. As discussed above, the trial court based its decision to revoke Defendant's community corrections sentence on Defendant's own testimony at the hearing. Without any support in the record for Defendant's assertions that the trial court judge received ex parte communications, he has failed to establish that he is entitled to plain error relief on this issue.

*Conclusion*

Based on the foregoing, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion. To be clear, this is a community corrections revocation matter and the fact that the sentence has a drug court component to it does not in any way affect the procedure by which the revocation hearing should have been handled. The result, however, is flawed because of lack of notice and the absence of evidence.

_____
TIMOTHY L. EASTER, JUDGE